UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THOMAS GESUALDI, LOUIS BISIGNANO, : 
MICHAEL O'TOOLE, MICHAEL C. BOURGAL, :
DARIN JEFFERS, JOSEPH A. FERRARA, SR., :
FRANK H. FINKEL, MARC HERBST, THOMAS : Case No.:
F. CORBETT, and ROBERT G. WESSELS,  as :
Trustees and Fiduciaries of the Local 282 Welfare :
Trust Fund, the Local 282 Pension Trust Fund, the :
Local 282 Annuity Trust Fund, and the Local 282 Job :
Training Trust Fund, :
:
                          Plaintiffs, :
:
              - against - :
:
C.N.C. INDUSTRIES, INC., :
:
                        Defendant. :
------------------------------------------------------------------------x

## COMPLAINT

        Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C. Bourgal, Darin Jeffers, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Thomas F. Corbett, and Robert G. Wessels, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, and the Local 282 Job Training Trust Fund (collectively, the "Funds"), for their complaint allege as follows:

### INTRODUCTION

        This is an action brought under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA").

        This action arises from the failure of defendants C.N.C. Industries, Inc. ("CNC") to (a) to permit an audit of its books and records (and those of its affiliated companies), Perfetto Enterprises Co., Inc. f/k/a Perfetto Associates Co. Inc. ("Perfetto Enterprises"), and Perfetto Associates, L.P. ("Perfetto Associates,") (separately and together, the "Affiliates") for the period

commencing September 28, 2019 through the date of the audit; (b) remit unpaid contributions owed to the Funds to be determined by audit or estimated audit for the period commencing September 28, 2019 through the date of the audit; (c) remit contributions due pursuant to a completed audit for the period September 28, 2019 through December 31, 2020; (d) submit remittance reports and corresponding contributions due for all months beginning with January 2021 and running through the present; (e) pay the full amount of contributions due based on submitted remittance reports for the period of months between January 2020 and December 2020; and (f) pay interest, liquidated damages, audit fees, attorney's fees and costs for all unpaid and late-paid contributions due.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§185(a), 1132(a)(3), 1132(e)(1), 1132(f) and 1145.

2. Venue lies in this district under 29 U.S.C. §1132(e)(2), as the Funds are administered in this district. Venue also lies in this district under 29 U.S.C. §185(a).

## THE PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. §1002(21)(A), as they have discretion and control over the assets and administration of the Funds.

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

5. The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

6. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants.

7. The collective bargaining agreements and the Trust Agreement set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining and Trust Agreement terms. Accordingly, the Trustees have legal right to bring suit under 29 U.S.C. §1132(a)(3) and 29 U.S.C. §1145.

8. CNC is, and at all times relevant to this action has been, an "employer" within the meaning of 29 U.S.C. §1002(5) and the Trust Agreement.

## FACTUAL BASIS FOR CLAIM

The Collective Bargaining Agreement, the Trust
<u>Agreement and the Obligation to Contribute to the Funds</u>

9. CNC is bound to the Metropolitan Trucking Association, Inc. & Independents Contracts for periods relevant to this action (collectively, the "CBA").

10. At all times relevant to this action, the CBA has required CNC to make contributions to the Funds on behalf of its employees who are covered by the CBA, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBA.

11. Along with the contributions, CNC is also required to submit remittance reports to the Funds. The remittance reports provide CNC's statement of the employees who performed work covered by the CBA and the number of hours each such employee worked in covered employment.

12. The CBA provides that CNC is bound to the Trust Agreement.

13. The Trust Agreement provides that if CNC fails to remit contributions by the date due, CNC is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

14. The CBA provides that if an Employer fails to remit contributions to the Funds when due, the Funds are entitled to the remedies set forth in Section 502(g)(2) of ERISA.

<u>The Trust Agreement and the Obligation to Permit Audits</u>

15. The Trust Agreement requires an Employer to submit to periodic audits. Specifically, the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

16. The Trust Agreement defines "pertinent books and records" to include but not be limited to:

  (a) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;

  (b) Payroll tax records submitted to federal and state governments, including Forms 941, W-2;

  (c) Complete business income tax returns;

  (d) Cash disbursements records;

  (e) General ledgers;

  (f) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

   (g)  Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

  17.  The Trust Agreement additionally provides that pertinent books and records of an Employer include:

> the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of The Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes The Employer.

  18.  Upon information and belief, each of the Affiliates, are, and at all times relevant to this action each has been, affiliated with CNC and has either (i) employed persons who have performed the same type of work as the employees of the Affiliates and/or (ii) are, along with CNC, part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes.

  19.  Specifically, CNC and Perfetto Enterprises are each owned and/or controlled by Claudio Perfetto and Anthony Perfetto, each employs person(s) who perform work covered by the CBAs, and/or each owns and/or operates common equipment, including trucks.

  20.  Specifically, CNC and Perfetto Associates are each owned and/or controlled by Claudio Perfetto and Anthony Perfetto, each employs person(s) who perform work covered by the CBAs, and/or each owns and/or operates common equipment, including trucks.

  21.  Upon information and belief, CNC may have additional affiliated entities, as that term is defined in the Trust Agreement.

  22.  The Trust Agreement requires an Employer to submit to audit in order to verify that all contributions required under the CBA have been remitted to the Funds, that such

- 5 -

contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered employees are receiving the required benefits and/or credits.

23. The Trust Agreement provides that the Trustees may "apply for and be entitled to a mandatory injunction directing The Employer to produce its said books and records for audit."

24. The Trust Agreement provides that an Employer determined to owe contributions by an audit is required to pay, in addition to the contributions due, interest, liquidated damages, attorney's fees, audit fees, filing fees, and costs.

25. Pursuant the Trust Agreement, as amended, interest is calculated at the rate of 1½ percent per month (18% per year).

Authorization for Estimated Audits to Calculate Contributions and Other Amounts Owing

26. The Trust Agreement provides that an Employer who "fails to submit the required remittance reports and/or pertinent books and records for audit within twenty (20) days of written demand must pay an increased monthly contribution."

27. The Trust Agreement further provides that the increased monthly contribution for which an Employer is liable is calculated by multiplying the applicable contribution rates by the total number of covered hours as determined by the methods described below.

28. The Trust Agreement provides that, for the purpose of calculating increased monthly contributions for which an Employer is liable, the total number of covered hours is determined as follows: (1) "by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the 'base month')"; (2) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours is

increased by 10% and then added to the number, if any, of reported hours in the base month (which is also increased by 10%) to arrive at the total number of covered hours in the base month; and (3) in the event that no base month can be identified because there are no previous remittance reports or audit reports, the Employer is deemed to have the number of employees that the Union reports in writing that the Employer is employing, and each employee is deemed to have worked 40 hours per week for the entire unreported period.

29. The Trust Agreement provides that where an Employer:

> submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit within 20 days of written demand, such failure shall be a material breach of the Trust Agreement. In such event the Trustees and/or their agents may compute the additional contributions due for any month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the current contribution rate.

The Failure to Allow an Audit

30. Through various correspondences, the Funds, their auditors, and their legal counsel requested that CNC submit its books and records and those of the Affiliates to audit for the period commencing September 28, 2019.

31. Despite the foregoing actions by the Funds, CNC has failed to submit its books and records and those of the Affiliates to audit for the period commencing September 28, 2019.

Remittance Reports

32. CNC has failed to submit remittance reports reflecting the amount of contributions due for the period of months commencing January 1, 2021 and continuing to date.

33. Through various correspondences, the Funds and their legal counsel requested that CNC submit the missing remittance reports.

34. To date, CNC has failed to submit the remittance reports due for the period of months commencing January 1, 2021 and continuing to date.

Unpaid Contributions

35. For the months of January through December 2020, CNC submitted remittance reports reflecting contributions due, but failed to remit the corresponding contributions due.

36. Through various correspondences, the Funds and their legal counsel requested that CNC pay the delinquent contributions.

37. To date, CNC has failed to pay contributions owing for the months of January through December 2020.

Amounts Due on Contributions Paid Late

38. CNC paid contributions late for the period of October 2020 through December 2020.

39. The Trust Agreement provides that the failure to promptly remit contributions due constitutes a violation of the CBA and Trust Agreement. The Trust Agreement further provides that in such instance, CNC is obligated to remit interest, liquidated damages, attorney's fees and costs.

40. By various correspondence the Funds request payment of ERISA damages due as a result of late payments.

41. To date, CNC has failed to pay the interest, liquidated damages, attorney's fees and costs due on the late contributions.

Other Amounts

42. On information and belief, additional contributions, interest, liquidated damages, audit fees, administrative fees, and attorney's fees and costs will continue to become due and owing by CNC to the Funds during the pendency of this action.

### **COUNT I — ERISA**

43. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

44. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

45. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (a)    the unpaid contributions,

    (b)    interest on the unpaid contributions,

    (c)    an amount equal to the greater of –

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages … in an amount not in excess of 20 per cent of the [unpaid contributions],

    (d)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (e)  such other legal or equitable relief as the court deems appropriate …."

46. Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action…."

47. CNC, by virtue of its failure to submit its books and records and those of the Affiliates to audit, is subject to an injunction ordering it to submit immediately to such audits and is required to pay the contributions due according to such audits, interest, liquidated damages, audit fees, attorneys' fees, and costs.

48. CNC, by virtue of its failure to submit its books and records and those of the Affiliates to audit, is further liable for an increased monthly contribution for each month during the period for which the books and records were not produced.

49. In accordance with the Trust Agreement, for each month in which an Employer failed to submit remittance reports and/or failed to submit pertinent books and records to the Funds' auditors within twenty days of written demand, CNC's contribution rate due under the Trust Agreement provision is computed as stated therein.

50. In accordance with the Trust Agreement, for each month in which an Employer did submit remittance reports but failed to submit pertinent books and records for audit within twenty days of written demand, CNC's increased monthly contribution rate due under this Trust Agreement provision is computed as stated therein.

51. CNC is also required to pay interest, liquidated damages, audit fees, attorney's fees, and costs in accordance with the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

**COUNT II — ERISA**

52. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

53. CNC's failure to submit all required remittance reports and failure to pay (in certain instances timely) all contributions, interest, liquidated damages, and attorney's fees and costs owing to the Funds violates the CBAs and the Trust Agreement which is incorporated into the CBAs, and thus gives rise to an action under ERISA Section 515.

54. The Funds are thus entitled under ERISA Section 502(g)(2) to unpaid contributions, interest on unpaid and late-paid contributions, liquidated damages on unpaid and late-paid contributions, attorney's fees and costs.

**COUNT III — LMRA**

55. Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

56. By failing to pay the contributions and other amounts owing, CNC has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

57. The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment:

1. Declaring the Affiliates to be "affiliated" with CNC as that term is defined in the Trust Agreement and by applicable law;

2. Ordering CNC to submit its books and records and those of the Affiliates to audit for the period commencing September 28, 2019;

3. Ordering CNC to pay (i) any delinquencies identified by the audit[s], (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the cost of the audit;

4. Ordering CNC to further pay (i) estimated contributions in an amount computed under the Trust Agreement for the period from September 28, 2019 through the audit date, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the costs incurred in estimating the amounts due;

5. Ordering CNC to submit remittance reports for any months for which such reports have not been submitted as of the date judgment is entered;

6. Ordering CNC to pay to the Funds (i) all delinquent contributions owed; (ii) interest on all delinquent and late-paid contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment; (iii) an amount of liquidated damages equal to the greater of (a) interest on the delinquent and late-paid contributions or (b) 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs; and

- 13 -

7. Providing such other legal and equitable relief as the Court deems proper, including injunctive relief where warranted.

Dated: New York, New York
April 5, 2021

/s/ Michael S. Adler
Michael Seth Adler
Marie Barnes Hahn
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
(212) 563-4100
madler@cwsny.com
mhahn@cwsny.com

Attorneys for Plaintiffs